**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| A.B. | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  19-5770 |
| | : | |
| MARRIOTT INTERNATIONAL, INC. | : | |

## MEMORANDUM

KEARNEY, J.                                                                                    July 6, 2020

A victim of sex trafficking is now pursuing claims against hotel chain Marriott under Congress's 2008 law providing victims of sex trafficking with a civil remedy for damages against their traffickers and "whoever" knowingly benefits from participation in a venture the person knew or should have known engaged in sex trafficking.  Marriott now moves to file third-party claims against its hotel franchisees and the persons who personally trafficked her the victim in and out of their franchisee hotels.  The victim understands the third-party claim against the franchisees.  But she opposes third-party claims against the personal traffickers fearing lost anonymity and personal harm.  We are mindful of her concerns and will enforce strict confidentiality "attorneys eyes" only agreements and other reasonable steps to ensure safety.  We are also mindful Marriott may not be able to serve these persons or state a claim against them.  We also can sever at a later stage.  But under Rule 14, the traffickers may also be liable to the victim.  Marriott may bring third-party claims against the franchisees and traffickers.  We will proceed to trial under our May 11, 2020 Order mindful the victim did not sue these persons and Marriott could sue them after our final Order if necessary and we expect counsel will cooperate and not unduly delay consistent with Rule 1.

## I.   Background

A.B. alleges Marriott profited from A.B.'s sex trafficking and knowingly or negligently aided and engaged her traffickers in their venture by leasing hotel rooms to her traffickers when it knew, or should have known, the traffickers advertised her to provide sex for money in the Marriott-branded hotel rooms owned by Marriott franchisee hotel owners.[1]  A.B. alleges Marriott knew or should have known about A.B.'s trafficking because of the traffickers' frequent use of the hotels; constant traffic in the hotels; the traffickers' assistance in checking-in A.B. but not proceeding to the room; and, A.B.'s appearance without  luggage, her avoidance of eye contact, and prominent bruising and injury on her body.[2]  A.B. alleges despite these signs of sex trafficking, Marriott failed to act and instead financially benefitted from the business brought by traffickers to its hotels.[3]

On December 9, 2019, A.B. sued Marriott for physical and psychological injuries resulting from sex trafficking and exploitation under section 1595 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 providing victims of sex trafficking with a civil remedy for damages against their traffickers and "whoever" knowingly benefits from participation in a venture the person knew or should have known engaged in sex trafficking.[4]  A.B. seeks damages against Marriott under the Act's civil remedy provision.  She seeks compensatory damages, past and future medical expenses, past and future lost wages, damages for past and future emotional distress, consequential damages, noneconomic damages, punitive damages, attorney's fees, and costs.

Marriott moved to dismiss A.B.'s complaint arguing the Act imposes liability only on those who perform "(1) an overt act of participation in (2) a sex trafficking venture" and A.B. failed to

plead these elements.[5]  It argued A.B. could not hold Marriott vicariously liable for the actions which all allegedly took place at Marriott franchisee hotels.

We rejected Marriott's argument about the applicable legal standard. We reasoned the "overt act" and "sex trafficking venture" requirements apply when establishing criminal liability under section 1591 of the Act but do not govern civil claims brought under section 1595.[6]  We held section 1595 "allows for civil liability against facilitators who benefit from what they knew or should have known is a sex trafficking venture."[7]   Applying this standard, A.B. pleaded sufficient facts Marriott knowingly benefitted financially from the venture, participated in a venture, and knew or should have known of A.B.'s trafficking in its hotels.[8]  We then held A.B. plausibly pleaded a principal-agent relationship between Marriott and its franchisees sufficient to establish vicarious liability under section 1595 of the Act.[9]

As we found, Congress's use of the phrase "knew or should have known" to establish civil liability under the Act evinced the clear "remedial nature" of section 1595.[10]  In defining the remedy, Congress contemplated not only the "perpetrators" benefit from the trafficking and exploitation of persons used to solicit sex for money, but there are many other, mainstream businesses potentially enabling the trade.  Hotels in particular are often close spectators; as we commented: "Given their physical proximity as the venue for the trafficking, hotels uniquely may have more knowledge than car rental or airplane businesses, or even lawyers or accountants, who may be paid from the trafficking proceeds."[11]   But we did not need to then address the way Congress envisioned apportioning liability between the profiteers who may understand sex trafficking may be occurring under their roof.

## II.     Analysis

As A.B. elected only to sue Marriott for its involvement in her trafficking, Marriott now seeks leave to file a third-party complaint under Federal Rule of Civil Procedure 14(a) asserting theories of indemnity and contribution against its local hotel franchisees and A.B.'s traffickers. A.B. does not object to Marriott pursuing third-party claims against the local franchisees but disputes Marriott's ability to sue the traffickers. The parties ask us to decide whether the traffickers "may be liable" to Marriott under a theory of indemnity or contribution if Marriott is found liable. We find they may be, subject to later severance for trial depending on the nature of the proofs.

Federal Rule of Civil Procedure 14(a) provides a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."[12] "The purpose of Rule 14(a) is 'to permit additional parties whose rights may be affected by the decision in the original action to be joined and brought in so as to expedite the final determination of the rights and liabilities of all of the interested persons in one suit.'"[13]

To grant an impleader motion under Rule 14, we must first find there exists "some substantive basis in the law for the third-party plaintiff to hold the proposed third-party defendant liable."[14]  A third-party complaint is proper when it seeks relief under a theory of secondary or derivative liability.[15]  Rule 14(a) makes clear, however, that "[a]llegations that the proposed third-party defendants are directly liable to the plaintiff are not a proper basis for a third-party complaint[.]"[16]

To assess whether the trafficker's liability derives from or is secondary to Marriott's potential liability to A.B., we must first look to the cause of action A.B. pleads as to Marriott—the 2008 amendment to section 1595 of the Trafficking Victim Protection Reauthorization Act.[17] Section 1595 of the Act provides a civil remedy to victims of sex trafficking: "An individual who

is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney[']s fees."[18]  "The phrase 'knew or should have known,' echoes common language used in describing an objective standard of negligence."[19]  We explained two months ago when interpreting this Act: "Section 1595 'opened the door for liability against facilitators who did not directly traffic the victim, but benefitted from what the facilitator should have known was a trafficking venture.'"[20]

A.B. argues, because section 1595 creates Marriott's direct liability, Marriott cannot articulate how the traffickers' liability could derive from or is secondary to Marriott's misconduct. Marriott responds the traffickers' liability derives from its potential liability because of what A.B. must prove to recover: Marriott "knowingly" benefited "from participation in" such a "venture" and that it "knew or should have known" the venture engaged in trafficking crimes.  Marriott argues because its liability is premised on A.B. proving sex trafficking occurred in one of its hotels, Marriott would necessarily be able to apportion some or all its liability to the sex traffickers, or "perpetrators" under the Act.

We see no language in the Act directly addressing how to apportion liability.  And while the parties do not cite, and we do not independently find, a court assessing how Congress envisioned apportioning liability under the Act, Marriott's reading is sufficiently supported by the Act's text to permit us to conclude the traffickers "may be liable" to Marriott if Marriott is found liable to A.B. under Pennsylvania law of indemnity and contribution.

Pennsylvania law defines "joint tortfeasor" as "two or more persons jointly or severally

liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them."[21]   To be considered joint tortfeasors, "the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury."[22]   Contribution "is not a recovery for the tort, but rather it is the enforcement of an equitable duty to share liability for the wrong done by both."[23]   Contribution is a fault-sharing mechanism between two parties responsible for a harm.[24]

Marriott pleads an overlapping of acts and injuries between A.B.'s claims against Marriott and Marriott's claims for indemnity and contribution against the traffickers.  Marriott recites the traffickers' alleged activity, including forcing A.B. to have sex for money with various buyers at the Marriott-branded hotels after the traffickers assisted A.B. to check-in at the hotels.[25]   These claims would support a section 1595 claim against the sex traffickers.  While A.B. did not elect to sue her traffickers for understandable safety and personal security reasons, her injuries if proven will all stem from the sex trafficking venture.  Marriott, its franchisees, and the sex traffickers each share alleged involvement or neglect in carrying out or enabling the venture causing harm to A.B. Her injuries against any party involved or neglectful in the venture are the same alleged in her complaint: compensatory damages, past and future medical expenses, past and future lost wages, damages for past and future emotional distress, consequential damages, noneconomic damages, punitive damages, attorney's fees, and costs. If Marriott is found liable to A.B., it appears Marriott "may" have the right of contribution from other participants who also may have had a role in A.B.'s injuries.[26]

This liability is distinguishable from cases where a defendant files an impleader against a third-party defendant on a theory of liability the plaintiff alone holds against the third-party defendant.  The best example of the distinction is Judge Nealon's decision in *Robbins v. Yahama*

*Motor Corp.*[27] Walter Robbins sued Yamaha seeking damages for his injuries sustained when his Yamaha motorcycle collided with a car driven by Joseph Galko. He sued Yamaha under a theory of crashworthiness alleging Yahama's failure to provide crash bars on its motorcycle increased his injuries. Yamaha sought to join Galko arguing Galko's negligence contributed to the accident and therefore he could be liable to Yamaha for contribution.  Judge Nealon denied the motion.  He explained the crashworthiness doctrine allows a plaintiff to recover against a motorcycle manufacturer for his increased injuries sustained as a result of the motorcycle's poor design.  Judge Nealon noted the doctrine did not consider the cause of the crash and therefore Yamaha could not seek contribution or indemnity from Galko, even if Robbins could have sued Galko for negligence.

Unlike *Robbins*, Marriott seeks indemnity or contribution from the sex traffickers for liability premised on the same federal statute. Their liability would both be premised on a role in the sex trafficking of A.B.  Marriott is not asserting A.B.'s right to sue the sex traffickers under a separate act or theory of liability.  It solely seeks to attempt to apportion liability among joint tortfeasors under the same civil cause of action for the same transaction or occurrence should it be found liable.  The Act does not offer much guidance, but we see each responsible party under the Act is liable for "damages." [28]  At this point in the proceeding, we decline to hold the sex traffickers may not be liable to Marriott under theories of indemnity or contribution if Marriott is found liable to A.B.[29]

We remain conscious of the remedial nature of the Act and its civil remedy through which Congress provides a plaintiff with options in choosing the defendant he or she wishes to name to pursue her claim for "damages."  But our focus today is solely on whether Marriott presents a Rule 14(a)(1) basis establishing the traffickers "may be" liable to it for a judgment in this action.  We do not address our equitable authority under Rule 14(a)(4) and Rule 21 to sever Marriott's claims

against the traffickers or to order separate trials between A.B. and the hotel entities and Marriott and the traffickers under Rule 42. We are also not convinced Marriott's indemnity and contribution claims should be pursued until after Marriott's liability to A.B. is established.[30] But these considerations are best left until raised by the parties after discovery can delineate where facts are intertwined or overlap. With our focus on Rule 14(a)(1), and because the damages overlap and many persons and entities may be culpable in A.B.'s trafficking, we cannot preclude Marriott's ability to attempt a recovery against the traffickers, or other businesses who also "knew or should have known" of the trafficking, when the Act contemplates each may be liable.

## III.    Conclusion

We grant Marriott's motion to file a third-party complaint against the third-party defendants in the accompanying Order.

---

[1] ECF Doc. No. 1 at ¶ 108.

[2] *Id.* at ¶¶ 109-112.

[3] *Id.* at ¶¶ 112-120.

[4] William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1595 (the "Act").

[5] ECF Doc. No. 25-1 at 15 (citing *United States v. Afyare*, 632 F. App'x 272, 285 (6th Cir. 2016)).

[6] ECF Doc. No. 28 at 16-20. While we cite to the ECF document system for ease of reference, our April 22, 2020 Memorandum is also available through Westlaw. *A.B. v. Marriott Int'l, Inc.*, No. 19-5770, --- F. Supp. 3d ---, 2020 WL 1939678 (E.D. Pa. Apr. 22, 2020).

[7] ECF Doc. No. 28 at 20.

[8] *Id.* at 20-28.

[9] *Id.* at 28-30. We held A.B. failed to plead an apparent agency theory against Marriott. *Id.* at 30-32.

[10] *Id.* at 19.

[11] *Id.* at 11.

[12] Fed. R. Civ. P. 14(a)(1).

[13] *Naramanian v. Greyhound Lines, Inc.*, No. 07-4757, 2010 WL 4628096, at *2 (E.D. Pa. Nov. 15, 2010) (quoting *Glens Falls Indem. Co. v. Atl. Bldg. Corp.*, 199 F.2d 60, 63 (4th Cir. 1952)).

[14] *Id.* (citing *Kraus v. Kemp Furniture Indus., Inc.,* No. 93-5777, 1994 WL 196606, at *1 (E.D. Pa. May 13, 1994)).

[15] *Monarch Life Ins. Co. v. Donahue,* 702 F. Supp. 1195, 1197 (E.D. Pa. 1989); *see also Circuit City Stores, Inc. v. Citgo Petroleum Corp.,* No. 92-7394, 1994 WL 483463, at *3 (E.D. Pa. Sept. 7, 1994) (holding impleader appropriate where movant seeks contribution, indemnification, "or any kind of derivative liability recognized by the relevant substantive law").

[16] *Kraus,* 1994 WL 196606, at *2.

[17] We extensively discussed this Act and the various interpretations of the Act's text in our April 22, 2020 Memorandum.  ECF Doc. No. 28 at 9-28.

[18] 18 U.S.C. § 1595(a).

[19] *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 19-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019)).

[20] ECF Doc. No. 28 at 9 (citing Gallant Fish, *No Rest for the Wicked: Civil Liability Against Hotels in Cases of Sex Trafficking*, 23 BUFF. HUM. RTS. L. REV. 119, 138 (2011)).

[21] 42 Pa. Cons. Stat. § 8322.

[22] *Foulke v. Dugan*, 212 F.R.D. 265 (E.D. Pa. 2002) (quoting *Lasprogata v. Qualls*, 397 A.2d 803, 806 n.4 (Pa. Super. 1979); Black's Law Dictionary, 4th Ed. (1968)).

[23] *Swartz v. Sunderland*, A.2d 289, 290 (Pa. 1961) (citing *Parker to Use of Bunting v. Rodgers*, 189 A. 693, 695 (Pa. Super. 1937) ("The doctrine of contribution rests on the principle that, when the parties stand in *aequali jure*, the law requires equality, which is equity, and one of them shall not be obliged to bear a common burden in ease of the rest.")).

[24] *Kemper Nat'l P & C Companies v. Smith*, 615 A.2d 372, 375 (Pa. Super. 1992).  Marriott also sues the traffickers for common law indemnity. Common law indemnity is "a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." *Sirianni v. Nugent Bros., Inc.*, 506 A.2d 868, 871 (Pa. 1986). The right of indemnity exists when "a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another and for which he himself is only secondarily liable," such as "where there is a relation

of employer and employee, or principal and agent." *Kemper Nat'l P & C Companies*, 615 A.2d at 374-75 (emphasis omitted) (quoting *Vattimo v. Lower Bucks Hosp., Inc.*, 465 A.2d 241, 250-51 (Pa. 1983)). "Common law indemnity requires at least two elements: (1) a preexisting legal relationship between the indemnitor and the indemnitee, and (2) a tort." *Pansini v. Trane Co.*, No. 17-3948, 2018 WL 2129453, at *7 (E.D. Pa. May 9, 2018). Marriott argues it holds no "active fault" and is liable only for the acts of the traffickers. While we are not so sure we agree, we need not fully address this question until presented in a Rule 12 or Rule 56 motion.

[25] ECF Doc. No. 48-1 at ¶¶ 18-24.

[26] Fed. R. Civ. P. 14(a)(1).

[27] *Robbins v. Yamaha Motor Corp.*, 98 F.R.D. 36 (E.D. Pa. 1983).

[28] 18 U.S.C. § 1595(a).

[29] We reject A.B.'s two other objections to Marriott filing a third-party complaint. First, A.B. fails fails to identify a single case suggesting we may deny a motion for leave to file a third-party complaint because of the *in terrorem* effect. Next, Marriott's third-party complaint meets Federal Rule of Civil Procedure 8(a)(2) because it asserts sufficient facts to establish its claims for indemnity and contribution from the traffickers.

[30] *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 412 (3d Cir. 1993) (holding that while "a party defendant who claims a right of contribution or indemnity from third persons" may "implead[ ] the absent party under Federal Rule of Civil Procedure 14, it is not required to do so; and, if it does not, its right to bring a separate action for contribution or indemnity is unaffected").